## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ADRIAN FRANCIS LEWIS,  )
  )
    Petitioner,  )
  )
                                     )          Civil Action No.: 22-cv-3149 -LKG
v.  )
  )          Dated: September 12, 2025
WARDEN DEBORA DARDEN, et al.,  )
  )
    Respondents.  )
  )
  )

## MEMORANDUM OPINION

Adrian Francis Lewis brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, collaterally attacking his 2011 state conviction for second degree murder and related offenses. ECF No. 1. Respondents contends that Lewis's claims are without merit. ECF No. 9. Lewis has replied. ECF No 10. The Petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

### I.      Background

#### A. The Trial

On June 17, 2010, Lewis was indicted on charges of attempted murder, attempted second-degree murder, first-degree assault, and two counts of use of a handgun in a crime of violence. ECF No. 9-1 at 6-8.

A jury trial was held from January 25 to 31, 2011. ECF No. 9-1 at 8. The Appellate Court of Maryland summarized the facts adduced at trial as follows:

> This case arises out of a shooting that occurred in the early morning hours of April 10, 2010 at Andrew's Bar and Grill in District Heights, Maryland. Two victims, Walter Britt and Cynthia Aaron, were shot in the parking lot after the bar

closed. Although Britt was shot several times, he survived. Aaron died from a gunshot wound to the head. . . .

Shortly before 1:00 a.m. Britt left the bar to smoke a marijuana cigarette in his car. While Britt stood next to his car, a second vehicle drove into the bar's parking lot. A man—whom Britt identified as [Lewis]—exited the vehicle, approached Britt, and said: "What the fuck are you looking at? Say something." The man then stated, "I will kill all you fuckers out here," reached toward his waistband, and pulled out a gun. Britt tried to run away, but he was shot several times.

Later that morning, Prince George's County Police Detective Michael Ober recorded an interview with Britt at Prince George's County Hospital. Britt described the shooter's age, hair length, and hair color, and stated that he wore a ripped shirt. He told Detective Ober that he would be able to identify the person who shot him if he saw a picture of the man. He stated further that he had seen the shooter at Andrew's Bar prior to the incident.[1]

[Lewis] took the stand in his defense. He testified that he was at the bar on the morning of the shooting, but that he did not consume any alcohol there. [Lewis] stated that prior to visiting the bar, he was drinking with friends in the parking lot of a nearby 7-11. He admitted to getting into a fight at the bar earlier in the night. The fight was not related to the shooting, and [Lewis] testified that he went home immediately after the fight ended.

[1] "It is not clear from the interview whether Britt meant that he saw the shooter at Andrew's Bar on the night of the shooting, or just at some other time in the past."

ECF No. 9-1 at 116-17.

The jury found Lewis guilty of second-degree depraved heart murder, second degree attempted murder, and both handgun counts. ECF No. 9-1 at 6-7. He was acquitted of first degree murder, attempted first-degree murder, and first-degree assault. *Id*. Lewis was sentenced on April 6, 2011 to a total term of 80 years' incarceration. ECF No. 9-1 at 7-8.

### B.    Direct Appeal

Lewis noted a direct appeal to the Appellate Court of Maryland raising three errors. Lewis contended that the trial court erred by permitting Detective Ober to testify regarding the presumed truthfulness of the prosecution's main witness; the trial court erred in allowing the prosecution to bolster the testimony of the only witness to identify Lewis as the shooter by using hearsay evidence; and the trial court erred by refusing defense counsel's request for an instruction on voluntary intoxication. ECF No. 9-1 at 14.

The Appellate Court affirmed Lewis's judgment of conviction. ECF No. 9-1 at 114-32. The court issued its mandate on March 26, 2012. *Id*. at 133. Lewis's timely petition for a writ of certiorari in the Supreme Court of Maryland (formerly named the Court of Appeals of Maryland), was denied on June 25, 2012. *Id*. at 135, 10.

### C.    Postconviction Proceedings

Lewis, proceeding pro se, initiated a formal state postconviction proceeding pursuant to Maryland's Uniform Postconviction Procedure Act ("UPPA"). ECF No 9-1 at 134-204. He later supplemented the petition, through counsel. *Id*. at 206-51. Ultimately, Lewis asserted nine claims of ineffective assistance of counsel and an additional claim that the "cumulative effect" of his attorneys' errors entitled him to relief. *Id*. at 266-67. Relevant here, Lewis's fourth state post-conviction claim alleged that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in denying the defense's request for a jury instruction on involuntary manslaughter. *Id*. at 267. His sixth state post-conviction claim alleged that trial counsel was ineffective for failing to request a voir dire question to probe whether prospective jurors would be biased against defense witnesses. *Id*.

On May 24, 2021, the state post-conviction court issued a memorandum opinion and order. ECF 9-1 at 265-78. The court agreed that appellate counsel was ineffective for failing to raise the jury instruction issue on direct appeal, and the court granted Lewis a "belated appeal" to raise this issue. *Id*. at 273-74. Relief was denied as to each of Lewis's other claims. *Id*. at 271-77.

Lewis's timely application for leave to appeal the partial denial of his petition (*id*. at 279-85) was denied on November 3, 2021 by the Appellate Court of Maryland. *Id*. at 362-63. The court's mandate issued on December 7, 2021. *Id*. at 364.

### D.    Belated Appeal

As permitted by the post-conviction court, Lewis timely filed a notice of appeal arguing that the trial court erred in denying his request for an instruction on involuntary manslaughter. ECF No. 9-1 at 12. On February 4, 2022, the Appellate Court of Maryland held that the trial court did not err in denying the requested instruction and affirmed Lewis's convictions in an unreported opinion. *Id*. at 365-80. His timely petition for a writ of certiorari, raising the same claim (*id*. at 383-98), was denied by the Supreme Court of Maryland on May 27, 2022. *Id*. at 420.

### E.    The Federal Petition

Lewis filed his federal petition on December 5, 2022.  ECF No. 1. Two claims are before the Court: whether Lewis was deprived of his right to:  (1) an impartial jury because trial counsel failed to request a voir dire question concerning bias toward or in favor of defense witnesses; and (2) due process and equal protection when the trial judge refused to instruct the jury on the defense of involuntary manslaughter.   ECF No. 1 at 8.

## II.    STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C.A. § 2254(a).  The federal habeas statute at 28 U.S.C.A. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable

application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. 100.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466

5

U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. 100. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. 100. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## III. ANALYSIS

Lewis asserts that trial counsel rendered ineffective assistance in failing to request a voir dire question designed to identify jurors who might harbor bias against defense witnesses. ECF No. 1 at 8. The post-conviction court's determination that Lewis was not entitled to relief on this claim withstands scrutiny.

The only witness called on behalf of the defense was Lewis. ECF 9-4 at 2. Trial counsel testified at the post-conviction hearing that he did not ask the voir dire question Lewis complains of, because, generally, he found little benefit to the question and decided not to request it because he did not intend to call any witnesses, other than possibly Lewis. He did not want to suggest to the jury that the defense would call any witnesses, including Lewis, who may have ultimately decided not to testify. Counsel stated:

> I didn't think I was going to have a defense witness other then [sic] the defendant himself. So I – the last thing I want to do is intimate to a jury that I will be calling witnesses in his defense and then not produce them. That's just a dangerous maneuver to take.
>
> I have not had a problem with jurors—I have seen that question asked before. I have not ever had a juror respond that they would have a problem with a defense witness testifying. I didn't ask of it in this case, no.
>          \*\*\*
> That's the defendant. I mean I guess you can characterize him as a defense witness. Again, I don't decide, and Mr. Lewis and I may not remember this correction, but I can tell you many times I don't make a decision on whether—I prepare him to do both, testify and not to testify. I don't make that decision sometimes until I'm right in the middle of it to see how it's going. I didn't make – it is easy, I didn't make that request to the jury during voir dire.

ECF 9-7 at 59-60, 68-69.

The post-conviction court relied on trial counsel's testimony and concluded that counsel's performance was not deficient. ECF 9-1 at 275. The Court agrees. Trial counsel testified he made a strategic decision not to request the voir dire question, because he found little benefit in the question versus risk in prematurely suggesting to the jury that the defense would call witnesses. Counsel's strategy was not objectively unreasonable.

Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989) Having examined the post-conviction court's ruling as well as having independently

7

examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Lewis has not demonstrated either error or prejudice regarding his trial attorney's conduct. Moreover, Lewis offers no reason to suggest that the outcome of the trial would have been different had his trial counsel propounded the voir dire question. Accordingly, the post-conviction court's dismissal of this claim is neither contrary to, nor an unreasonable application of, federal law.

Lewis's second claim fairs no better. Lewis claims that the Appellate Court of Maryland erred in affirming the trial court's denial of his request for a jury instruction on the lesser-included offense of involuntary manslaughter. ECF No. 1 at 8-9. In support of this claim, Lewis argues that the Appellate Court applied state case law that was distinguishable from his case and misinterpreted the evidence. *Id.* at 9. In denying Lewis's belated appeal regarding this issue, the Appellate Court of Maryland provided the following background as to this claim:

### Charging

Lewis was arrested and charged in the shooting. As to the first victim, Britt, Lewis was charged with attempted first-degree murder, attempted second degree murder, first-degree assault, and use of a handgun in the commission of a crime of violence. As to the second victim, Aaron, Lewis was charged with murder and use of a handgun in the commission of a crime of violence. The murder indictment was charged using the "statutory short form" indictment. Under such an indictment, a defendant is deemed charged with first-degree murder, second-degree murder, and manslaughter. Md. Code, Crim. Law, §2-208; *see also Dishman v. State*, 352 Md. 279, 285-90 (1998).

***

### Charges Submitted to the Jury

At the conclusion of the State's case-in-chief, the prosecutor informed the trial court that, with respect to the victim Aaron, the State would be submitting to the jury on the charges of first-degree premeditated murder, second-degree specific intent murder, second-degree depraved heart murder, and use of a handgun in the commission of a crime of violence. Defense counsel appeared to acquiesce in the State's decision by limiting its response to only those crimes. As to the victim Britt, the State indicated its intent to proceed with attempted first-degree murder, attempted second-degree murder, and use of a handgun in the commission of a crime of violence.

### Jury Instruction on Involuntary Manslaughter

During trial, defense counsel submitted a written request for jury instructions. Included in that request was Maryland Criminal Pattern Jury Instruction 4:17.8,

8

which sets forth the elements for second-degree depraved heart murder, grossly negligent act involuntary manslaughter, and unlawful act involuntary manslaughter. MPJI-CR 4:17.8.

Later, while discussing potential jury instructions with the trial court, defense counsel reiterated that he was requesting an instruction on "a second-degree depraved heart misdemeanor version which involved involuntary manslaughter." Defense counsel argued that a rational juror could make a finding on involuntary manslaughter given "the razor-thin differentiation between second-degree depraved requirements and requirements for involuntary manslaughter." The court declined defense counsel's request, finding that an involuntary manslaughter instruction was "inappropriate…based upon the facts that have been presented in this case."

ECF 9-1 at 366-69. In determining that the trial court did not err in refusing to give the instruction, the Appellate Court turned to Maryland law, finding in pertinent part:

### Analysis

Maryland Rule 4-325 states, in relevant part, that a "court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." Md. Rule 4-325(c). That Rule "has been interpreted consistently as requiring the giving of a requested instruction when the following three-part test has been met: (1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197-98 (2008).

When, as here, a defendant is charged with murder by the statutory short form, he may be entitled to an instruction on manslaughter. *Dishman, supra*, 352 Md. at 290-92. That is due, in part, to the fact that a murder indictment in the statutory short form includes implicitly the charges of first-degree murder, second-degree murder, and manslaughter. *Id*. at 285-90. If a defendant is tried pursuant to such an indictment and the manslaughter charge remains a part of the case when it is submitted to the jury, then the trial court may be required to give a manslaughter instruction pursuant to Rule 4-325(c). *Id*. at 292.

If, however, the manslaughter portion of the charge is no longer part of the case, because the prosecution has either entered a nolle prosequi to that charge or has decided not to submit that charge to the jury, then a request for a manslaughter instruction is not evaluated pursuant to the strictures of Rule 4-325(c). *Lee v. State*, 186 Md. App. 631, 661- 62 (2009), rev'd on other grounds by 418 Md. 136 (2011). Rather, the request must be evaluated under the principles governing requests for instructions regarding uncharged offenses. *Id*. at 658-63 (discussing *Hook v. State*, 315 Md. 25 (1989)).

That analysis demands a two-step review process. First, we must determine if the uncharged offense is a "lesser included" offense to the remaining charge. *Id*. at 662-63. If it is not a lesser included offense, then the instruction need not be given. *Id*. If, on the other hand, the offense is a lesser included offense, then "we must consider whether there exists, in light of the evidence presented at trial, a rational basis upon which the jury could have concluded that the defendant was guilty of the lesser offense, but not guilty of the greater offense." *Ball v. State*, 347 Md. 156, 191 (1997). Under that second prong, "it is not enough to determine that the evidence would be sufficient for the jury to convict on [the lesser included] offense[.]" *Burrell v. State*, 340 Md. 426, 434 (1995); *see also Ball*, 347 Md. at 190-92. "In other words, 'the test is not whether there is sufficient evidence to convict of the lesser included offense but whether the evidence is such that the jury could rationally convict only on the lesser included offense.'" *Henry v. State*, 184 Md. App. 146, 165 (2009) (emphasis added) (citing *Burch v. State*, 346 Md. 253, 279 (1997)). "If a rational jury could not reach this conclusion, then the judge need not submit the lesser offense to the jury." *Ball*, 347 Md. at 191. The court's decision in that regard is reviewed for an abuse of discretion. *Henry*, 184 Md. App at 165.

Here, the record shows that the prosecutor entered effectively a *nolle prosequi* to the offense of involuntary manslaughter when he informed the trial court at the close of the State's case-in-chief that he would not be submitting that portion of the murder charge to the jury for consideration. *See Dean v. State*, 325 Md. 230, 234 (1992) (noting that a "nolle prosequi is simply the prosecution's abandonment of a charging document count or part of a count" and that it "need not be couched in any particular language or take any specific form"). In light of the prosecutor's decision, to which defense counsel acquiesced, the charge of involuntary manslaughter was not going before the jury at the time the court denied Lewis's request that the jury be instructed on that charge. *See Lee*, 186 Md. App. at 661-62. As a result, the trial court's denial of that request is not governed by Rule 4- 325(c) but rather is governed by the aforementioned two-prong test regarding requests for instructions on uncharged offenses.

*Id*. at 371-74. Turning then to the two part test for determining whether a jury instruction was required under Maryland law, the Appellate Court of Maryland found:

Returning to the present case, it is clear that gross negligence involuntary manslaughter is a "lesser included" offense of depraved heart murder. Thus, the first prong of the two-prong test regarding requests for instructions on uncharged offenses is satisfied. We now turn to the second prong to determine whether, based on the evidence presented at trial, a rational jury could have concluded that Lewis was guilty of gross negligence involuntary manslaughter, but not guilty of depraved heart murder.

*Id*. at 376. The court then summarized the decisions in *Burch v. State*, 346 Md. 253 (1997) and *Costley v. State*, 175 Md. App. 90 (2007) as instructive, where each case found that the

Defendant was not entitled to requested jury instructions on lesser offenses. *Id*. at 377.  The
Appellate Court then returned to the facts of Lewis' case and determined:

> In the present case, evidence established that, on the day of the shooting, Lewis
> got into a physical altercation with several unidentified individuals outside of
> Andrew's Bar and Grill and then left the scene. Sometime later, Lewis returned to
> the scene with a gun and confronted Britt, who, along with several other people,
> had just left the bar. There was no evidence that Britt had been involved in the
> prior altercation. Upon confronting Britt, Lewis brandished the gun and declared
> that he was going to "kill all you fuckers out here." When Britt ran away, Lewis
> fired multiple shots in his direction, striking him five times. A sixth shot struck
> and killed Aaron, who was standing also outside of the bar. Lewis admitted that
> he had gotten into a physical altercation prior to the shooting, but claimed that he
> did not return to the bar afterward. He denied categorically any involvement in the
> shooting.
>
> We hold that no rational jury could have convicted Lewis of gross negligence
> involuntary manslaughter, but acquitted him of second-degree depraved heart
> murder. The evidence showed that Lewis confronted Britt, an otherwise innocent
> bystander, outside of a crowded bar at closing time, brandished a gun, and then
> declared that he was going to kill everyone outside. When Britt ran away, Lewis
> took action to make good on that promise, firing at least six shots in Britt's
> direction. Five of those shots struck Britt, while the sixth shot struck and killed
> Aaron, another innocent bystander who happened to be standing in Lewis's line
> of fire.
>
> Given those circumstances, we are persuaded that Lewis's "level of
> blameworthiness" in killing Aaron was, at the very least, that of depraved heart
> murder. Purposefully firing a weapon six times in the direction of multiple people,
> after declaring an intent to kill everyone in that area, is nothing short of "the
> deliberate perpetration of a knowingly dangerous act with reckless and wanton
> unconcern and indifference as to whether anyone is harmed or not." *Alston*, 101
> Md. App. at 56 (citations omitted). No rational jury could have found that the
> killing of Aaron constituted merely "a wanton and reckless disregard for human
> life," but not "an extreme indifference to the value of human life." *Beckwitt*, 249
> Md. App. at 355 (citations and quotations omitted). As was the case in *Burch* and
> *Costley*, it is beyond the realm of reasonableness to suppose, based on the
> evidence presented, that a rational jury could have found that Lewis was guilty
> only of the lesser crime. Accordingly, the trial court did not abuse its discretion in
> refusing to instruct the jury on the lesser charge of gross negligence involuntary
> manslaughter.

*Id*. at 378-80. The Appellate Court's findings of facts are supported by the record.

"Generally, questions of jury instructions are matter of state law, not cognizable on
federal habeas review unless a specific constitutional issue is implicated that calls into question

the Due Process Clause." *Grandison v. Corcoran*, 78 F. Supp. 2d 499, 507 (D. Md. 2000); *see also Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); *Nickerson v. Lee*, 971 F. 2d 1125, 1137 (4th Cir. 1992) (Ordinarily "'instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues,' …and are therefore not reviewable in federal habeas proceedings.'") (citations omitted). Although Lewis asserts that his federal rights were violated by the denial of the requested jury instruction, he does not offer sufficient support of this argument.

Moreover, Lewis has failed to demonstrate that the Appellate Court of Maryland's rejection of this claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. The Supreme Court has declined to address whether a trial court's failure to issue a jury instruction on a lesser included offense presented a federal question in a non-capital case. *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980). Lewis has not met his burden on this claim and therefor relief on this issue is denied.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2); *Buck*, 580 U.S. at 115; *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115. (citation omitted). When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Lewis has not made the requisite showing.  Accordingly, the Court declines to issue a certificate of appealability. Lewis may  still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied.  A separate Order follows.

_____
Date

LYDIA KAY GRIGGSBY
United States District Judge